UNITED STATES DISTRICT COURT-

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM WOLFE,<br><br>               Petitioner,<br><br>v.<br><br>JOHANNA SMITH, Warden,<br><br>               Respondent. | Case No. 1:09-CV-00533-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Currently pending in this habeas corpus matter is Respondent's Motion for Summary Dismissal. (Dkt. 17.) The parties have consented to a United States Magistrate Judge conducting all proceedings, including entering final judgment, in accordance with 28 U.S.C. § 636(c). (Dkt. 12.)

      The parties have adequately stated the facts and the law in their briefing, and the Court will resolve the pending Motion on the parties' briefing and the written record without oral argument. D. Idaho L. Civ. R. 7.1(d)(1). For the reasons that follow, the Court finds the Petition to be untimely, and Respondent's Motion will be granted.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

After a jury trial in 1982, Petitioner was convicted of one count of murder in the first degree for shooting Scott Gold to death outside a bar in Stites, Idaho, and the state court sentenced him to fixed life in prison. (State' Lodging A-1, pp. 112-14.) Petitioner appealed his conviction and sentence, but the Idaho Court of Appeals affirmed. (State's Lodging B-4.) He did not seek review in the Idaho Supreme Court, and the remittitur was issued on December 24, 1984. (State's Lodging B-5.) Petitioner next pursued post-conviction relief, alleging ineffective assistance of trial counsel and other claims, but all relief was denied. (State's Lodgings G-5, G-7, G-8.) Petitioner completed his initial round of post-conviction proceedings in 1990. (State's Lodging G-8.)

Petitioner had nothing pending in any court for the next fourteen years, until he filed a "Motion for Rule 35 Relief from an Illegal Sentence" on December 2, 2004. (State's Lodging H-1.) In that motion, Petitioner alleged for the first time in court that Scott Gold was of Native American descent and that the offense occurred on the Nez Perce Indian Reservation, which Petitioner contended meant that "the subject matter of the homicide in question is and at all times has been solely within the exclusive federal authority." (State's Lodging H-1, p. 2.) According to Petitioner, the state court lacked jurisdiction to convict him of murder, and his sentence for that crime was therefore "illegal." (State's Lodging H-2, p. 11.)

The state district court summarily dismissed the motion as untimely. (State's Lodging H-3.) Rather than appeal from that order, Petitioner filed a "Motion to Reconsider

**MEMORANDUM DECISION AND ORDER - 2**

For [sic] I.R.C.P. 60(b) Relief." (State's Lodging M-2, p. 28.) Before the court ruled on the request for reconsideration, Petitioner filed a new petition for post-conviction relief, his third, on February 11, 2005.[1] (State's Lodging I-1.) In this latest pleading, Petitioner alleged that his trial counsel was ineffective for not pressing the jurisdictional issue during the original criminal proceedings in the 1980s. (State's Lodging I-1, pp. 1-6.) Petitioner also raised the substantive jurisdictional issue again in other simultaneous filings, which the court ordered to be docketed as part of the post-conviction matter. (State's Lodging J-12, Appendix G.)

The district court issued a preliminary decision indicating that Petitioner's jurisdictional argument may have merit, but because "[s]etting aside a conviction for first-degree murder is serious business and should not be undertaken lightly," it ordered the State and the Nez Perce tribe to file briefs addressing the issue. (State's Lodging I-2, pp. 5-6.) The court also appointed counsel for Petitioner. (State's Lodging J-12, Appendix A, p. 2.) The Nez Perce tribe did not respond to the court's order, but the State objected on numerous grounds. (State's Lodgings I-3, I-7, I-8.)

To that point, Petitioner had offered no proof to support his claim that Gold was a member of an Indian tribe, but documents were eventually discovered in June 2006 apparently showing that Gold was an enrolled member of Blackfeet Indian Nation in Montana and that Stites, Idaho, sits within the boundary of the Nez Perce Indian

---

[1] In fact, the parties agree that the state district court has never expressly ruled on Petitioner's motion to reconsider the denial of his Rule 35 motion.

**MEMORANDUM DECISION AND ORDER - 3**

Reservation. (State's Lodging I-16, Exhibit C.) After considering the parties' briefing and hearing oral argument, however, the district court found the third post-conviction petition to be untimely under Idaho Code § 19-4902. (State's Lodging I-20, pp. 19-20.) The court further concluded that if it construed the pleading as a petition for a writ of habeas corpus, it would lack jurisdiction because a habeas petition must be filed in the county in which the petitioner is held. (State's Lodging I-20, p. 20.) On January 4, 2007, the court entered an order of dismissal, (State's Lodging J-12, pp. 6-7), and Petitioner did not appeal.

Three months later, on April 11, 2007, Petitioner filed a petition for writ of habeas corpus in Ada County, again raising the jurisdictional argument, which was dismissed on procedural grounds on December 2, 2008. (State's Lodging J-1, J-2, J-3; State's Lodging J-13, pp. 3-7.) Petitioner submitted an untimely notice of appeal, and the Idaho Supreme Court dismissed the appeal. (State's Lodging K-5.) Petitioner next filed a "Petition for Writ of Certiorari/Writ of Review" in the Idaho Supreme Court, raising essentially the same argument, which was denied on June 8, 2009. (State's Lodging L-1, L-2.)

On October 21, 2009, Petitioner initiated these federal habeas proceedings, alleging that (1) he has been deprived of his right to due process of law under the Fourteenth Amendment because "the trial court lacked jurisdiction in which to try, convict and sentence the Petitioner for an alleged murder occurring on Indian lands," and (2) his right to due process was violated when the state court "failed to decide the jurisdiction issue on the merits of the claim." (Dkt. 1, pp. 10-13.) This Court appointed counsel to assist Petitioner, and it ordered the Petition to be served on Respondent. (Dkt. 5, p. 4.)

**MEMORANDUM DECISION AND ORDER - 4**

Respondent responded to the Petition by filing the pending Motion for Summary Dismissal, in which Respondent contends that the applicable statute of limitations expired long before the Petitioner came to federal court. (Dkt. 17-1, pp. 12-16.) Respondent also argues that Petitioner has not fairly presented the same constitutional claims to the Idaho Supreme Court in a procedurally proper manner, and his claims must be dismissed as procedurally defaulted. (Dkt. 17-1, pp. 16-23.) Petitioner has filed a response (Dkt. 29), to which Respondent has replied (Dkt. 33), and the Motion is now at issue.

Because the Court concludes that the Petition is untimely, it will not reach Respondent's procedural default argument.

## STANDARD OF LAW

Habeas petitions filed after the enactment of the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d). The one-year period begins to run from the date of one of four triggering events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D). The most common event is the date upon which the judgment became final in state court, either after the direct appeal has concluded or after the time for seeking an appeal expired. 28 U.S.C. § 2244(d)(1)(A). When a petitioner's state court judgment became final before AEDPA was enacted, as here, the petitioner generally had a one-year grace period, until April 24, 1997, in which to file his federal petition. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).

However, additional statutory subsections provide for a later starting date when any of the following situations are present: (1) the State has unlawfully created an impediment

**MEMORANDUM DECISION AND ORDER - 5**

to filing a federal petition, 28 U.S.C. § 2244(d)(1)(B); (2) the United States Supreme Court has determined that a new constitutional right is retroactive, 28 U.S.C. 2244(d)(1)(C); or (3) the petitioner has discovered new evidence that could not have been obtained previously through the exercise of reasonable diligence, 28 U.S.C. § 2244(d)(1)(D).

To encourage the proper exhaustion of state court remedies, the statute of limitations is tolled or suspended for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This is known as "statutory tolling."

The period also may be tolled for equitable reasons when extraordinary circumstances prevented the petitioner from filing on time ("equitable tolling"). *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A litigant seeking equitable tolling bears the burden of establishing that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way. *Holland*, 130 S.Ct. at 2562 (citing *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005)).

## DISCUSSION

It is undisputed that the state court judgment in this case became final in 1984, nearly twelve years before AEDPA was enacted. Respondent argues that limitations period began to run on April 24, 1996, the date that AEDPA became law, and expired one year later, on April 24, 1997. According to Respondent, Petitioner is not entitled to statutory

tolling because he had no state post-conviction or other collateral actions pending during that one year period.

In contrast, Petitioner claims that Respondent is equitably estopped from raising the statute of limitations as a defense because State officials engaged in misconduct that prevented him from filing on time, and that he is entitled to equitable tolling of the statute of limitations on those same grounds. Alternatively, he argues that the Petition is timely because the starting date of the limitations period was delayed until he uncovered new evidence of Scott Gold's tribal affiliation in 2006, and that the limitations period was then statutorily tolled while additional matters were pending in the state courts. Finally, he contends that even if the Court believes that the action is untimely, his "actual innocence" provides a reason for the Court to overlook his lack of compliance with the statute of limitations.

The Court will address each of Petitioner's arguments in turn.

**1. Equitable Considerations**

Petitioner first claims that Idaho Department of Correction (IDOC) officials "withheld [Petitioner's] legal material from him until after the statute of limitations had run [and] it informed him — three times — that the statute of limitations had expired." (Dkt. 29, p. 2.)

More specifically, Petitioner alleges that in 1995 or 1996 he gave his legal material to another inmate, Bob Jones, who was then working as a law clerk for IDOC, so that Jones could prepare a federal petition on his behalf. (Affidavit of William Wolfe, Dkt. 29-

**MEMORANDUM DECISION AND ORDER - 7**

1, ¶ 4.) In January of 1996, Petitioner was transferred to an out-of-state prison, but his legal file stayed behind. (Wolfe Aff., ¶ 6.) Jones has since executed an affidavit in which he claims that IDOC officials confiscated all of his legal work in 1996, including Petitioner's file, and retained them during the one-year grace period that Petitioner had for filing a habeas petition in federal court. (Affidavit of Bob Jones, Dkt. 29-3, ¶¶ 11-12.)

In May of 1997, Jones wrote a letter to Petitioner and three other inmates to inform them that the federal statute of limitations had recently expired in their cases. (Jones Aff., ¶ 20.) That same month, an IDOC paralegal sent Petitioner's legal material to him together with a letter stating that the time to file a habeas petition had expired. (Wolfe Aff., ¶¶ 12-14.) In February 1998, the paralegal allegedly reiterated to Petitioner that the statute of limitations had elapsed, and Petitioner believed that he no longer had recourse in the federal courts. (Wolfe Aff., ¶ 20.)

On these facts, Petitioner invokes the doctrine of "equitable estoppel" and contends that the State's alleged misconduct precludes Respondent from now raising the statute of limitations as a defense. (Dkt. 29, pp. 1-5.) He further contends that even if Respondent is not estopped from asserting the defense entirely, the Court should find that the limitations period was equitably tolled. (Dkt. 29, pp. 8-10.)

Equitable estoppel and equitable tolling are related concepts, but equitable estoppel focuses on the defendant's affirmative misconduct or fraudulent concealment of the facts, *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), while equitable tolling can be based on any "extraordinary circumstance" that stands in the petitioner's way of

**MEMORANDUM DECISION AND ORDER - 8**

filing a timely petition, *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). "Both equitable tolling and equitable estoppel can be used to 'stop a limitations period from continuing to run after it has already begun to run.'" *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001). But in either case the limitations period will be suspended or tolled only as long as the plaintiff was prevented from initiating an action. *Stitt v. Williams*, 919 F.2d 516, 523 (9th Cir. 1990) (citation omitted).

Assuming that Petitioner's factual allegations are true, the Court nevertheless concludes that neither equitable estoppel nor equitable tolling would assist him in excusing his lengthy delay in getting to federal court. To the extent that State officials engaged in misconduct, it was limited to the retention of Petitioner's legal files during the running of the grace period from 1996 to 1997. That barrier was removed by May of 1997 when Petitioner's files were returned to him, and yet he waited another seven years before he pursued relief again in any court. The information that Bob Jones and an IDOC paralegal gave to Petitioner about the expiration of the federal statute of limitations was technically true, and the fact that they did not inform that he might be able to argue for equitable tolling does not amount to misconduct or some other extraordinary circumstance.

A party invoking the protection of equity must still act with reasonable diligence, and Petitioner has not shown that the State's alleged misconduct prevented him from raising claims for relief between 1997 and late 2004, when he began a new round of collateral attacks in the state courts. *See Balsewicz v. Kingston*, 425 F.3d 1029, 1034 (7th Cir. 2005) (holding that equitable estoppel was not warranted because the petitioner

**MEMORANDUM DECISION AND ORDER - 9**

"waited four and a half years before filing any state collateral challenge."); *see also Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (to be entitled to equitable tolling, a petitioner must show that he has been pursuing his rights diligently during the time period that he seeks to have tolled). Accordingly, these equitable doctrines are not available to Petitioner as a means of saving an otherwise untimely filing.

**2. Delayed Accrual and Statutory Tolling**

Petitioner alternatively contends that the limitations period did not even begin to run until he was able to develop the factual basis of his claim that Gold was a member of an Indian tribe, which occurred during the third post-conviction action in June of 2006. (Dkt. 29, p. 5.) In support, he relies on the statutory subsection that governs the accrual date for claims based on newly discovered evidence, 28 U.S.C. § 2244(d)(1)(D), which provides that the one-year limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Respondent counters that even if the limitations period began as late as June 2006, the period would have only been statutorily tolled until the third post-conviction proceeding became final on February 15, 2007, and Petitioner's October 2009 Petition would still be over a year and half out of time. (Dkt. 33, pp. 4-6.) The Court is persuaded by this argument.

While a state habeas action was also pending in Ada County state district court between April 2007 and December 2008, that action did not toll the limitations period

**MEMORANDUM DECISION AND ORDER - 10**

because it was not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2). In *Artuz v. Bennett*, 531 U.S. 4, 11 (2000), the Supreme Court held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." The state court in Ada County dismissed Petitioner's habeas action after concluding that (1) habeas was not an appropriate vehicle in which to challenge a conviction; (2) if the application were construed as a post-conviction petition, it was filed in the wrong county; and (3) was barred because the Idaho County district court had already denied relief. (State's Lodging J-13, pp. 3-7.) Each of these reasons shows that the state court deemed the action to be improperly filed under applicable state law.

Petitioner attempts to avoid this result by claiming that the Rule 35 proceeding that he initiated on December 2, 2004, is still pending—and tolls the limitations period under § 2244(d)(2) to this day—because the state district court never ruled on his motion to reconsider the denial of Rule 35 relief. (Dkt. 29, pp. 6-7.) Contrary to Petitioner's argument, the district court's order denying relief in that matter became final when the time to appeal expired on January 25, 2005.

This conclusion is dictated by Idaho Appellate Rule 14 and case law that has interpreted it. Rule 14(a) requires that a notice of appeal be filed within forty-two days from the date that an appealable order, judgment, or decree has been entered. The Rule also provides for the termination and restarting of the time to appeal when certain post-judgment motions are filed in criminal matters:

**MEMORANDUM DECISION AND ORDER - 11**

> The time for an appeal from any criminal judgment, order or sentence in an action is terminated by the filing of a motion within fourteen (14) days of the entry of the judgment which, if granted, could affect the judgment, order or sentence in the action, in which case the appeal period for the judgment and sentence commences to run upon the date of the clerk's filing stamp on the order deciding such motion.

I.A.R. 14(a).

By the Rule's plain terms, the time to appeal is terminated only by a motion that is filed in a criminal case within fourteen days of "the entry of judgment," and a motion filed within fourteen days of an otherwise appealable post-judgment order will not extend the time to appeal. *State v. Yeaton*, 829 P.2d 1367 (Idaho Ct. App. 1992). In those circumstances, "the appeal must be filed within forty-two days of that order," regardless whether a motion to reconsider has been filed in the interim. *See id* at 1369; *see also State v. Thomas*, 199 P.3d 769, 770 (Idaho 2008) (holding that the filing of a Rule 35 motion within fourteen days of the entry of an order revoking probation did not stop the time to appeal from the order revoking probation). Petitioner did not appeal from the district court's order denying Rule 35 relief, and that order became final under state law on January 25, 2005.

In addition, while it is true that the state district court did not expressly rule on the motion to reconsider, Petitioner did not diligently pursue the matter, either. Rather than pressing the court for a ruling or appealing the court's order denying Rule 35 relief, Petitioner instead chose to alter his tactics and attack his conviction in a third petition for post-conviction relief. A fair reading of the record is that the parties then shifted their

**MEMORANDUM DECISION AND ORDER - 12**

focus to the post-conviction proceeding and deemed the Rule 35 matter to be closed or replaced by the new action.

For these reasons, Petitioner's motion to reconsider did not prolong the life of the Rule 35 matter indefinitely.

Therefore, even if the Court were to conclude that the limitations period did not begin until June of 2006, and that it was tolled until the third post-conviction proceeding was completed in February 15, 2007, the statute of limitations would have expired, at the latest, on February 15, 2008. Petitioner's "Petition for Writ of Certiorari/Writ of Review," filed in the Idaho Supreme Court in May 2009, could not breathe new life into a limitations period that had already expired, *see Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003), and the Petition for Writ of Habeas Corpus would still be well over a year out of time.

### 3. Actual Innocence

For his final argument, Petitioner claims that the Court should overlook any non-compliance with the statute of limitations because the state court lacked jurisdiction to convict him of murder, which he contends means that he is actually innocent of the crime.

The United States Supreme court has held that a procedural default may be excused in a federal habeas case if the petitioner can show a fundamental miscarriage of justice, which means that a non-harmless constitutional error has probably resulted in the conviction of someone who is innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A claim of actual innocence under these circumstances is not itself a basis for habeas relief

**MEMORANDUM DECISION AND ORDER - 13**

but is instead a gateway to the consideration of defaulted constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To pass through this gateway, the petitioner must come forward with "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 315. In *Schlup*, the Supreme Court held that the petitioner bears the burden of demonstrating that "in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327. Put another way, the petitioner must establish that is "more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Although it is clear that a compelling claim of actual innocence will save a *procedurally defaulted* claim in a timely habeas petition, the Supreme Court has not yet addressed whether a petitioner's innocence will also provide a reason to toll the running of AEDPA's statute of limitations. In *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002), the Ninth Circuit declined to rule on the issue directly and remanded the case to the district court for its initial assessment of the quality of the petitioner's new evidence under the *Schlup* standard. The issue is still unsettled in this Circuit.[2]

---

[2] A panel of the Ninth Circuit has recently held that "there is no *Schlup* actual innocence exception to override AEDPA's statute of limitations," *Lee v. Lampert*, 610 F.3d 1125, 1133 (9th Cir. 2010), but the full Court has granted rehearing en banc, and *Lee* cannot be cited as precedent. *Lee v. Lampert*, 2011 WL 499347 *1 (9th Cir. 2011).

**MEMORANDUM DECISION AND ORDER - 14**

Whatever might be said about whether an actual innocence exception to AEDPA's statute of limitations exists, the matter is largely academic in this case because "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has not come forward with new reliable evidence showing that he did not engage in the conduct that led to Scott Gold's death; he instead makes the legal argument that the wrong court tried him for killing Gold. This Court agrees with the Sixth Circuit Court of Appeals, which rejected a similar argument:

> Regardless of whether the constitutional errors claimed by [Petitioner] are characterized as "procedural" or "jurisdictional" in nature, they do not implicate the "concern about the injustice that results from the conviction of an innocent person," *Schlup*, 513 U.S. at 325, that underlies "actual innocence" tolling.

*Casey v. Tennessee*, 2010 WL 3681224 at *2 (6th Cir. 2010).

**4. Conclusion**

For all of these reasons, the Court concludes that the Petition is not timely, and Respondent's Motion for Summary Dismissal will be granted on that basis. The Court does not reach Respondent's alternative argument that Petitioner's claims are procedurally defaulted.[3]

---

[3] The Court expresses no opinion on whether a potential remedy may still exist for Petitioner in the state courts. It concludes only that Petitioner has simply waited too long to seek relief in federal court.

**MEMORANDUM DECISION AND ORDER - 15**

# CERTIFICATE OF APPEALABILITY

As required by Rule 11 of the Rules Governing Section 2254 Cases, the Court evaluates this case for suitability of a certificate of appealability ("COA"). *See also* 28 U.S.C. § 2253(c).

A habeas petitioner cannot appeal unless a COA has issued. 28 U.S.C. § 2253. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

The Court is satisfied that the issues in this case are unique and significant enough that the petitioner should at least be given the opportunity to convince the Court of Appeals of the merit of his arguments, despite the ruling of this Court. The Court will therefore issue a COA over its decision that the Petition is untimely. Petitioner is advised that he must still file a timely notice of appeal in this Court if he intends to pursue such an appeal..

# ORDER

IT IS ORDERED:

1. Respondent's Motion for Summary Dismissal (Dkt. 17) is GRANTED.

2. The Court issues a certificate of appealability over its decision that the Petitioner did not comply with the statute of limitations in 28 U.S.C. § 2244(d). Upon the filing of a timely notice of appeal in this case, and not until such time, the Clerk of Court shall forward the necessary paperwork to the Court of Appeals for the Ninth Circuit for the docketing of an appeal in a civil case.



DATED: **March 11, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge